Filed 6/15/16  P. v. Andrade CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E063762 |
| v. | (Super.Ct.No. FSB1204004) |
| RENE ANDRADE, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Michael M. Dest, Judge.  (Retired judge of the San Bernardino Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed in part; reversed in part with directions.

William Paul Melcher under appointment by the Court of Appeal, for Defendant and Appellant.

1

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal, and Elizabeth M. Carino, Deputy Attorneys General, for Plaintiff and Respondent.

I

INTRODUCTION[1]

Defendant Rene Andrade was the pastor of a Los Angeles church where his 15-year-old victim was a member. After being charged with three offenses, defendant eventually pleaded no contest to one count of contact with a minor for the purposes of committing a sexual offense (count 3; § 288.3, subd. (a).) On appeal, defendant challenges 12 of his probation conditions. We uphold in part and reverse in part.

II

FACTUAL AND PROCEDURAL BACKGROUND

A. *The Underlying Offense*

In May 2012, defendant was 43 years old[2] and a pastor at El Shaddai Church in Los Angeles. Defendant met Jane Doe at her quinceañera ceremony, celebrating her 15th birthday. After the ceremony, defendant communicated with Jane Doe using Facebook, text messaging, and cell phones. The two would often speak to each other on the telephone for hours at a time.

---

[1] All statutory references are to the Penal Code unless stated otherwise.

[2] According to the probation reports, defendant was born in January 1969.

2

On August 21, 2012, Jane Doe reported to San Bernardino Police Officer Gerardo Orozco that she and defendant had a relationship in which they were seeing one another and exchanging messages and phone calls. Officer Orozco reviewed several text messages from defendant asking to see Jane Doe.

Jane Doe reported that defendant asked her to send him a naked picture and Jane Doe sent him a photo of her breasts. When Jane Doe confirmed that it was a genuine photo, defendant replied that he was masturbating and Jane Doe could hear him moaning and breathing heavily on the phone.

Defendant later asked Jane Doe if she would have sex with him. On August 14, 2012, he picked her up from school and they hugged and kissed in his car for about 20 minutes. Defendant also touched her thighs, pulled her bra down, and sucked on her breasts.

When Jane Doe's mother discovered that her daughter and defendant were communicating with one another and planning to have sex, she confiscated Jane Doe's cell phone. Defendant supplied Jane Doe with a new cell phone so that the two could stay in contact.

In September, 2012, officers arranged for Jane Doe to make a pretext telephone call to defendant. During the call, defendant agreed to come to Jane Doe's residence for a sexual encounter when her parents were not home. Defendant came to the residence but drove away without entering because he was aware he was being watched. Police stopped defendant and took him into custody. Defendant admitted to police that he had

3

intended to meet Jane Doe at her home for sex but he denied he had ever kissed her or touched her inappropriately.

## B. *The Criminal Charges*

Defendant was initially charged with two counts of committing a lewd and lascivious act upon a minor 10 years or younger than defendant (counts 1 and 2; § 288, subd. (c)(1)) and one count of contact with a minor for the purposes of committing a sexual offense (count 3; § 288.3, subd. (a).) After various interim proceedings, defendant pleaded no contest to count 3 pursuant to a plea agreement. In exchange for his plea, the court sentenced defendant to 135 days in jail and placed him on five years of formal probation.

### III

### WAIVER OF PRIVILEGE AGAINST SELF-INCRIMINATION AND
### PARTICIPATION IN POLYGRAPH EXAMINATION

Three of defendant's probation conditions, Nos. 25, 26, and 34, read together require him to register as a sex offender (§ 290) and to participate in a treatment program, including polygraph testing. (§ 1203.067, subd. (b)(2).) Section 1203.067, subdivision (b)(3), requires "[w]aiver of any privilege against self-incrimination and participation in polygraph examinations, which shall be part of the sex offender management program."

When defendant raises a "facial constitutional defect in the relevant probation condition," (*In re Sheena K.* (2007) 40 Cal.4th 875, 887) this court reviews such questions of law de novo. (*In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1143.) The

4

Fifth Amendment to the United States Constitution provides that no person shall be compelled to incriminate himself at trial or in future criminal proceedings. (*Minnesota v. Murphy* (1984) 465 U.S. 420, 426.)

Defendant contends the statutory waiver of the privilege against self-incrimination violates the Fifth Amendment and is constitutionally overbroad: "A probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad." (*In re Sheena K., supra,* 40 Cal.4th at p. 890.) Defendant contends the waiver is overly broad because it is not limited to statements concerning the subject offenses and because it applies in any criminal proceeding, including a future offense committed after his probation expires. Accordingly, defendant contends the blanket waiver of privilege is unconstitutional under the Fifth Amendment.

The People counter that it does not violate the Fifth Amendment to require defendant to provide truthful disclosures while participating in the sex offender treatment program as a term of his probation. The People argue that trial courts have broad discretion to set reasonable conditions of probation in order to foster rehabilitation and to protect public safety pursuant to section 1203.1. (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120; *People v. Olguin* (2008) 45 Cal.4th 375, 379.) Therefore, the waiver requirement is narrowly tailored for purposes of probation supervision and treatment.

Additionally, the People assert that sex-offender probationers are protected in criminal proceedings regardless of any waiver of the privilege against self-incrimination.[3]

Based on a quartet of published cases which we discuss below, we conclude that, although defendant's statements generally would be inadmissible in criminal prosecutions, the blanket waiver is too broad and should be framed more narrowly. Defendant's statements, made in compliance with probation condition Nos. 25 and 34, are compelled, and therefore are inadmissible in a criminal trial under the Fifth Amendment privilege against self-incrimination. Defendant is also privileged not to answer official questions in any other proceeding, civil or criminal, formal or informal, where he reasonably believes the answers might incriminate him in a criminal case. Defendant's compelled statements can be used in a probation revocation proceeding because it is not a criminal proceeding. (*Minnesota v. Murphy, supra,* 465 U.S. at p. 435, fn. 7.) However, defendant cannot be forced to waive his constitutional right against self-incrimination for any crime other than the present offenses.

---

[3] This issue is presently pending before the California Supreme Court in numerous cases, including *People v. Friday* (2014) 225 Cal.App.4th 8, review granted July 16, 2014, S218288; *People v. Garcia* (2014) 224 Cal.App.4th 1283, review granted July 16, 2014, S218197; *People v. Klatt* (2014) 225 Cal.App.4th 906, review granted July 16, 2014, S218755; *People v. Rebulloza* (2015) 234 Cal.App.4th 1065, review granted June 10, 2015, S225503.)

*Murphy*

In *Murphy*, the United States Supreme Court addressed the admissibility in a criminal trial of statements the defendant, a sex offender, made during questioning by his probation officer. When Murphy's probation officer learned from Murphy's counselor that he had abandoned his treatment program and had admitted to previously committing rape and murder seven years before, the probation officer called Murphy into the office, with the intent of reporting to the police any incriminating statements. (*Minnesota v. Murphy, supra,* 465 U.S. at p. 422.)

The court in *Murphy* held that the Fifth and Fourteenth Amendments did not prohibit the introduction into evidence of Murphy's admissions made to the probation officer. The court stated: "We conclude, in summary, that since Murphy revealed incriminating information instead of timely asserting his Fifth Amendment privilege, his disclosures were not compelled incriminations. Because he had not been compelled to incriminate himself, Murphy could not successfully invoke the privilege to prevent the information he volunteered to his probation officer from being used against him in a criminal prosecution." (*Minnesota v. Murphy, supra*, 465 U.S. at p. 440.)

The *Murphy* court explained: "The Fifth Amendment, in relevant part, provides that no person 'shall be compelled in any criminal case to be a witness against himself.' It has long been held that this prohibition not only permits a person to refuse to testify against himself at a criminal trial in which he is a defendant, but also 'privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal

7

or informal, where the answers might incriminate him in future criminal proceedings.' [Citation.]  In all such proceedings, [¶] 'a witness protected by the privilege may rightfully refuse to answer unless and until he is protected at least against the use of his compelled answers and evidence derived therefrom in any subsequent criminal case in which he is a defendant. . . .  Absent such protection, if he is nevertheless compelled to answer, his answers are inadmissible against him in a later criminal prosecution.' [Citation.]" (*Minnesota v. Murphy, supra,* 465 U.S. at p. 426.)

The *Murphy* court further noted:  "A defendant does not lose this protection by reason of his conviction of a crime; notwithstanding that a defendant is imprisoned or on probation at the time he makes incriminating statements, if those statements are compelled they are inadmissible in a subsequent trial for a crime other than that for which he has been convicted.  [Citation.]" (*Minnesota v. Murphy, supra,* 465 U.S. at p. 426.)

The issue in the instant case is not the admissibility of compelled statements made in compliance with probation condition Nos. 25 and 34.  Unlike in *Murphy*, the issue here is whether compelling waiver of defendant's self-incrimination privilege is constitutional. *Murphy* supports the proposition that a defendant on probation retains the privilege against self-incrimination and cannot be compelled to waive it.

*Maldonado*

In *Maldonado v. Superior Court* (2012) 53 Cal.4th 1112, 1127, the California Supreme Court held the Fifth Amendment bars, not mere disclosure, but actual use of a declarant's compelled utterances to convict or criminally punish that person:  "[T]he Fifth

8

Amendment does not provide a privilege against the compelled 'disclosure' of self-incriminating materials or information, but only precludes the use of such evidence in a criminal prosecution against the person from whom it was compelled." (*Id.* at pp. 1134.) Thus, a defendant's Fifth Amendment rights are adequately safeguarded by the immunity against use, either direct or derivative, of defendant's statements against him. The *Maldonado* court stated: "As we have seen, the Fifth Amendment does not provide a privilege against the compelled 'disclosure' of self-incriminating materials or information, but only precludes the use of such evidence in a criminal prosecution against the person from whom it was compelled." (*Id.* at pp. 1122, 1129, 1134, 1137.)

Again it is undisputed here that defendant's statements made in compliance with probation condition Nos. 25 and 34 are compelled and therefore are inadmissible in a criminal trial under the Fifth Amendment privilege against self-incrimination. The issue here is whether a probation condition can compel defendant to waive his privilege against self-incrimination.

*Spielbauer*

The *Spielbauer* court rejected a forced waiver of self-incrimination: "[t]he constitutional guarantee against compelled self-incrimination protects an individual from being forced to testify against himself or herself in a pending criminal proceeding, but it does more than that. It also privileges a person not to answer official questions in any other proceeding, 'civil or criminal, formal or informal,' where he or she reasonably believes the answers might incriminate him or her in a criminal case. [Citations.] One

9

cannot be forced to choose between forfeiting the privilege, on the one hand, or asserting it and suffering a penalty for doing so on the other. [Citation.]" (*Spielbauer v. County of Santa Clara* (2009) 45 Cal.4th 704, 714; see *Minnesota v. Murphy, supra*, 465 U.S. at p. 426.)

We recognize "it is necessary or highly desirable to procure citizens' answers to official questions, including their formal testimony under oath. In such circumstances, an individual's invocation of the privilege against self-incrimination would frustrate legitimate governmental objectives. In light of the competing interests, it is well established that incriminating answers may be officially compelled, without violating the privilege, when the person to be examined receives immunity 'coextensive with the scope of the privilege' — i.e., immunity against both direct and 'derivative' criminal use of the statements. [Citations.] In such cases, refusals to answer are unjustified, 'for the grant of immunity has removed the dangers against which the privilege protects. [Citation.]' [Citation.]" (*Spielbauer v. County of Santa Clara, supra,* 45 Cal.4th at pp. 714-715.)

In the instant case, however, defendant is required under the section 1203.067, subdivision (b)(3), probation condition, not only to respond to questions during polygraph testing, but also to waive his privilege against self-incrimination. By requiring such waiver, defendant loses the Fifth Amendment safeguards of use immunity in a criminal trial.

In *Spielbauer v. County of Santa Clara, supra,* 45 Cal.4th 704, the plaintiff, who was a deputy public defender, refused to answer questions by a supervising attorney who

10

was investigating allegations the plaintiff had made deceptive statements to the court while representing a defendant. The plaintiff was told refusal to answer the questions would be deemed insubordination warranting discipline up to and including dismissal. The plaintiff was also told his responses could not be used in a criminal proceeding. The plaintiff declined to answer the questions, invoking his privilege against self-incrimination. The plaintiff was terminated on the grounds of deceptive court conduct and refusal to answer his employer's questions. (*Id.* at p. 709.)

The California Supreme Court in *Spielbauer* concluded that "a public employee may be compelled, by threat of job discipline, to answer questions about the employee's job performance, so long as the employee is not required, on pain of dismissal, to *waive* the constitutional protection against criminal use of those answers." (*Spielbauer v. County of Santa Clara, supra,* 45 Cal.4th at p. 710.) The *Spielbauer* court added that "the constitutional privilege against compelled self-incrimination in a *criminal* case or cause (U.S. Const., 5th Amend.; Cal. Const., art. I, § 15) does not protect against the *nonpenal* adverse use of officially compelled answers. [Citations.]" (*Id.* at p. 715.) This would include probation revocation proceedings. "Although a revocation proceeding must comport with the requirements of due process, it is not a criminal proceeding. [Citations.]" (*Minnesota v. Murphy, supra,* 465 U.S. at p. 435, fn. 7.)

Therefore, under *Spielbauer*, probation may be revoked for refusing to answer officially compelled questions in probation proceedings, so long as the defendant is not required to surrender his or her right against criminal use of the statements thus obtained.

11

(*Spielbauer v. County of Santa Clara, supra,* 45 Cal.4th at p. 725.) In addition, under *Spielbauer*, a formal guarantee of immunity is not required before defendant is required to submit to polygraph testing in compliance with probation condition No. 25 and 26, assuming questioning is tailored specifically, directly, and narrowly to compliance with probation conditions and participation in a sex offender management program. (*Id.* at pp. 718, 725.)

Although *Spielbauer* is distinguishable in that the plaintiff was not required to waive the privilege against self-incrimination, as was defendant in the instant case, *Spielbauer* supports the proposition that a probation condition can compel a defendant to answer questions by threat of revocation of probation but cannot require waiver of the privilege against self-incrimination. A defendant cannot be forced to forego the constitutional protection against criminal use of officially compelled statements in a criminal trial. (*Spielbauer v. County of Santa Clara, supra,* 45 Cal.4th at p. 710.) Thus, in the instant case, defendant can be compelled under section 1203.067, subdivision (b)(3), to submit to polygraph testing, but cannot be forced to waive his constitutional privilege against self-incrimination.

*Miller*

In *People v. Miller* (1989) 208 Cal.App.3d 1311, the court held that "[t]he trial court did not abuse its discretion by including the polygraph requirement as a condition of probation for the limited use as an investigative tool." (*Id*. at p. 1316.) The defendant in *Miller*, who pleaded guilty to committing a lewd and lascivious act upon a child

(§ 288, subd. (a)), was placed on probation, conditional upon the defendant submitting to polygraph testing at the direction of his probation officer. The *Miller* court concluded the polygraph probation condition was reasonable and valid because it assisted in monitoring probation compliance. The *Miller* court noted that "[t]he polygraph condition is designed to help evaluate the truthfulness of defendant's reports and '[t]he purpose and objectives of probation would be frustrated if a convicted defendant could maintain . . . a right of silence at the time of his . . . report to the probation officer . . . .'" (*Miller,* at p. 1316.) The *Miller* court further stated the polygraph condition was "aimed at deterring and discovering criminal conduct most likely to occur during unsupervised contact with young females," and therefore was reasonably related to future criminality. (*Id.* at p. 1314.)

The court in *Miller* concluded the polygraph condition was not overbroad because it was limited to questions relating to compliance with probation conditions. Even though there were no specific limitations on the questions to be asked during polygraph testing, the *Miller* court construed the condition as imposed to monitor the defendant's compliance with the probation condition prohibiting unsupervised contact with young females and therefore any polygraph test administered to the defendant at the direction of his probation officer "necessarily will be limited to questions relevant to compliance with that condition." (*People v. Miller, supra*, 208 Cal.App.3d at p. 1315.) The *Miller* court held the polygraph probation condition did not violate the defendant's privilege against

13

self-incrimination unless the defendant showed a realistic threat of self-incrimination. (*Ibid.*)

The court in *Miller* explained: "Although defendant has a duty to answer the polygraph examiner's questions truthfully, unless he invokes the privilege, shows a realistic threat of self-incrimination and nevertheless is required to answer, no violation of his right against self-incrimination is suffered. [Citation.] The mere requirement of taking the test in itself is insufficient to constitute an infringement of the privilege." (*Ibid.*)

*Miller*, decided in 1989, does not address the constitutionality of the section 1203.067, subdivision (3)(b), probation condition requiring waiver of the self-incrimination privilege because the statute was not enacted until after *Miller* was decided. We nevertheless conclude, based on *Murphy, Maldonado, Spielbauer, and Miller*, that the probation conditions, premised on section 1203.067, subdivision (b)(3), are unconstitutional to the extent they mandate defendant waive his privilege against self-incrimination. Such mandated waiver violates defendant's Fifth Amendment privilege against self-incrimination.

On the other hand, the probation condition compelling defendant to submit to polygraph testing at the direction of his probation officer, which is narrowly tailored to monitoring compliance with defendant's probation conditions and participation in his sex offender management program, is constitutional and valid when appropriately modified, as proposed by the People, to read as follows: "The questions shall be limited to those

14

relating to the successful completion of probation and the crime for which you were convicted." (*In re Sheena K., supra,* 40 Cal.4th at p. 888; *Brown v. Superior Court* (2002) 101 Cal.App.4th 313, 316-317, 322.)

III

PROBATION CONDITION NO. 17, FIELD INTERROGATION

Probation condition No. 17 requires defendant to "Submit to and cooperate in a field interrogation by any peace officer at any time of the day or night." A field interrogation condition is meant as a correctional tool used to determine whether the probationer is complying with the terms of his probation or disobeying the law. (*People v. Reyes* (1998) 19 Cal.4th 743, 752; *In re Anthony S.* (1992) 4 Cal.App.4th 1000, 1006.) An otherwise valid probation condition that impinges upon constitutional rights "must be carefully tailored, 'reasonably related to the compelling state interest in reformation and rehabilitation . . . .'" (*People v. Bauer* (1989) 211 Cal.App.3d 937, 942, quoting *In re White* (1979) 97 Cal.App.3d 141, 146.) A probation condition cannot be vague; it "'"must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated." . . .'" (*People v. Barajas* (2011) 198 Cal.App.4th 748, 753, quoting *In re Sheena K., supra*, 40 Cal.4th at p. 890.) A state may not "constitutionally carry out a threat to revoke probation for the legitimate exercise of the Fifth Amendment privilege." (*Minnesota v. Murphy, supra,* 465 U.S. at p. 438.)

15

Defendant contends the condition is unconstitutionally vague and overbroad and impairs his Fifth Amendment right because "it would be inherently uncooperative for [defendant] to assert his constitutional privilege during a field investigation." Defendant also asserts probation condition No. 17 would allow him to be interrogated on any matter, rather than his crime of conviction and compliance with probation, whether related or unrelated to his conduct.

We disagree the condition is vague because it expressly describes that defendant is required to submit to a field interrogation at any time. The probation condition is not overbroad because it aids the probation department in monitoring defendant's probation compliance and future criminality. (*People v. Olguin, supra,* 45 Cal.4th at p. 380; *People v. Bravo* (1987) 43 Cal.3d 600, 610; *People v. Lent* (1975) 15 Cal.3d 481, 486.) The Fifth Amendment claim also fails because defendant's incriminating statements can only be used against him to revoke his probation, not in a criminal proceeding. (*Minnesota v. Murphy, supra,* 465 U.S. at 435, fn. 7; *Maldonado v. County of Santa Clara, supra,* 53 Cal.4th at p. 1134; *People v. Brown, supra,* 101 Cal.App.4th at p. 320.)

IV

PROBATION CONDITION NOS. 13, 16, 24, AND 30

Probation condition No. 13 prohibits defendant's association "with females under the age of eighteen (18), unless in the presence of a responsible adult, who is aware of the nature of your background and current offense, and who has been approved by the probation officer." Probation condition No. 16 prohibits defendant from approaching

16

"minor female motorists or pedestrians not previously known to you or engag[ing] same in conversation in a public place or street." Probation condition No. 24 states, "Do not utilize any form of social media via the internet or access social media. Submit all internet devices including smart phones and tablets for examination upon request by any law enforcement agency." Probation condition No. 30 states, "Do not associate with minors or frequent places where minors congregate, including but not limited to: schoolyards, parks, amusement parks, concerts, playgrounds, swimming pools, and arcades, unless in the company of a responsible adult over the age of 21 who is approved by the Probation Officer or court, . . ."

The parties generally agree these probation conditions must contain a scienter requirement and must be modified to prohibit only knowing conduct. (*People v. Contreras* (2015) 237 Cal.App.4th 868, 886.) Where a probationer could unknowingly engage in activity prohibited by probation conditions, Courts of Appeal have modified those conditions to incorporate a scienter requirement. (See, e.g., *People v. Lopez* (1998) 66 Cal.App.4th 615, 629; *In re Kacy S.* (1998) 68 Cal.App.4th 704, 713 [association with approved persons]; *People v. Turner* (2007) 155 Cal.App.4th 1432, 1435-1436 [persons under 18]; *In re Victor L.* (2010) 182 Cal.App.4th 902, 912-913; *People v. Moses* (2011) 199 Cal.App.4th 374, 377 [minors]; *People v. Moore* (2012) 211 Cal.App.4th 1179, 1185.) Because defendant may act unknowingly the conditions must be modified to incorporate an express scienter requirement. (*People v. Patel* (2011) 196 Cal.App.4th 956, 960; *People v. Pirali* (2013) 217 Cal.App.4th 1341, 1350 [with addition of an

17

express knowledge requirement, probation condition regarding internet access is not unconstitutionally vague or overbroad].)

V

PROBATION CONDITION NOS. 14, 27, 28, and 30

Defendant objected to probation condition Nos. 14, 27, and 28. Probation condition No. 14 states, "Neither possess nor have under your control any 'obscene matter,' as defined in PC311." Probate condition No. 27 states, "Do not own, use, or possess any form of sexually explicit movies, videos, material, or devices unless recommended by a therapist and approved by the probation officer. Do not frequent any establishment where such items are the primary items viewed, sold at such establishment, and do not utilize any sexually oriented telephone services." Probation condition No. 28 states, "Do not frequent massage parlors, live nude shows or conventions where erotic materials and/or devices are the primary items sold."

We conclude these probation conditions are not overbroad because they are relevant to defendant's present and future criminality. A condition of probation will not be held invalid unless it (1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality. (*People v. Lent, supra*, 15 Cal.3d at p. 486; *People v. Olguin, supra,* 45 Cal.4th at pp. 379-380; *People v. Carbajal*, *supra*, 10 Cal.4th at p. 1121.)

18

Here the prohibited conduct is not in itself criminal. However, the conduct reasonably relates to defendant's present crimes and future criminality. Defendant encouraged his victim to share nude photos of herself and he used those photos for sexual gratification. The probation conditions could help prevent future crime by defendant. The challenged probation conditions are valid under two prongs of *Lent*. The trial court did not abuse its broad discretion imposing the conditions. (*People v. Contreras* (2015) 237 Cal.App.4th 868, 881.)

Defendant also objects to the term "frequent" as used to mean visit in probation conditions Nos. 27, 28, and 30. Probation condition No. 30 forbids appellant to "associate" with minors or "frequent" places where minors congregate. Defendant relies on two cases: "We also agree with defendant that the word 'frequent' renders the condition unconstitutionally vague, because it is both obscure and has multiple meanings. (*In re H.C.* (2009) 175 Cal.App.4th 1067, 1072.) Accordingly, we will order the gang-area condition to read as follows: 'You are not to visit or remain in any specific location which you know to be or which the probation officer informs you is an area of criminal-street-gang-related activity.'" (*People v. Leon* (2010) 181 Cal.App.4th 943, 952.) We disagree that "frequent" is too archaic to be commonly understood. Its meaning is the equivalent of "visit." No modification of the word is necessary to uphold the validity of the probation conditions using it.

# VI

## DISPOSITION

The parties agree probation condition Nos. 11, 25, and 26 must be modified to strike the portion of each condition requiring defendant to be responsible for paying costs or fees. (See *People v. Brown, supra,* 101 Cal.App.4th at pp. 321-322.) We also remand to modify probation condition Nos. 13, 16, 24, 25, 26, 30, 34 as explained in this opinion. Probation condition Nos. 13, 16, 24, and 30 should include the requirement of scienter. Subject to these modifications, we affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON            
                 J.

We concur:

RAMIREZ            
     P. J.

McKINSTER            
    J.

20